IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MATTHEW GENNARI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 23-cv-01507-LKG<br><br>Dated: March 30, 2026 |
| AMAZON.COM SERVICES LLC, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

In this civil action, the Plaintiff, Matthew Gennari, brings disability discrimination and failure-to-accommodate claims against the Defendant, Amazon.com Services LLC ("Amazon"), arising from his employment with Amazon, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Maryland Fair Employment Practice Act ("MFEPA"), Md. Code Ann., State Gov't § 20-601, *et seq. See generally* ECF No. 1.  Amazon has moved for summary judgment on these claims, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 41 and 41-66.  The motion is fully briefed.  ECF Nos. 41, 41-66, 44, 49, 50, 51.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** Amazon's motion for summary judgment (ECF No. 41); (2) **ENTERS JUDGMENT** summarily in favor of Amazon on the Plaintiff's claims; and (3) **DISMISSES** the complaint (ECF No. 1).

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this civil action, the Plaintiff brings disability discrimination and failure-to-accommodate claims against Amazon, arising from his employment with Amazon, pursuant to the ADA and the MFEPA.  *See generally* ECF No. 1.  Specifically, the Plaintiff alleges the following claims in the complaint: (1) discrimination under the ADA (Count I); (2) failure-to-accommodate under the ADA (Count II); (3) discrimination under the MFEPA (Count III); and (4) failure to conduct individualized assessment under the MFEPA (Count IV).  *Id.* at ¶¶ 67–98.  As relief, the Plaintiff seeks, among other things, to recover monetary damages, attorney's fees and costs from Amazon.  *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff Matthew Gennari is a former employee of Amazon.  ECF No. 1 at ¶ 2.

Defendant Amazon is an international e-commerce store that engages in the sale of millions of items online.  *Id.* at ¶ 2.

<u>The Plaintiff's Employment History</u>

On April 20, 2020, the Plaintiff began his employment with Amazon as an operations manager at Amazon's BWI2 facility, located in Baltimore, Maryland (the "Facility").  ECF Nos. 41-1 at ¶ 1, 41-2 at 7–8 (Plaintiff's Dep. Tr. 31:2–4; 32:1–8).  At the time of his hire, the Plaintiff voluntarily disclosed that he did not have a disability, or need an accommodation.  ECF No. 41-1 at ¶ 3; ECF No. 41-4.

The operations manager position requires that an employee work on site to manage shifts within the Facility and to responsibly manage other Amazon employees.  ECF Nos. 41-1 at ¶ 6, 41-2 at 8 (Plaintiff's Dep. Tr. 32:9–18), 41-5.  In this regard, the work shifts for an operations manager can last from 13 to 15 hours per day, and the duties of this position include several physical capability requirements, such as "lifting and moving material up to forty-nine pounds; lifting, stretching and reaching below the waist and above the head; frequent walking in the building; standing and walking for up to twelve hours per day; and ascending and descending

---

[1] The facts recited herein are taken from the complaint, Amazon's statement of undisputed material facts, the joint record and Amazon's motion for summary judgment, the memorandum in support thereof, and the declarations and attachments thereto.  ECF Nos. 41, 41-1, 44, 49 and 51.  Unless otherwise stated, the facts are undisputed.

ladders, stairs, and gangways safely without limitation." ECF Nos. 41-1 at ¶ 10, 41-2 at 9 (Plaintiff's Dep. Tr. 33:9–34:20), 41-5.

It is undisputed that the Plaintiff's typical commute time to the Facility is 40 minutes to one hour. ECF Nos. 41-1 at ¶ 4, 41-2 at 6 and 7 (Plaintiff's Dep. Tr. 17:20–22; 31:2–14), 41-3. It is also undisputed that the Plaintiff worked on weekends and that he commuted to work to the Facility outside of peak rush hours. ECF No. 41-1 at ¶¶ 4–5.

The Facility

The BWI2 serves as Amazon's Fulfillment Center and the size of the Facility is over one million square feet. ECF No. 41-6 at 6–7(Wilson Dep. Tr. 11:16–12:2). Amazon employs four to five operations managers at the Facility. ECF Nos. 41-1 at ¶ 11, No. 41-6 at 9 (Victoria Wilson Dep. at Tr. 22:7–15). It is undisputed that the Facility uses different pieces of equipment on the warehouse floor to conduct operations. ECF Nos. 41-1 at ¶ 12, 41-6 at 13–14, 21, 22–23 (Wilson Dep. Tr. 30:16–31:6; 42:2–10; 49:20–50:10). It is also undisputed that wheelchairs are permitted for use on the first floor of the Facility, for Amazon employees with jobs that do not entail lifting heavy objects or moving about the Facility. ECF No. 41-1 at ¶ 13.

But, motorized scooters have never been used at the Facility. *Id.* at ¶ 14; ECF No. 41-7 at 5–6 and 7–8 (Jessica Choi-Seigert Dep. Tr. 18:20–19:22; 26:20–27:12). And so, Amazon contends in this case that motorized scooters would not be permitted on the warehouse floor of the Facility for safety purposes. ECF No. 41-1 at ¶ 14

The Plaintiff's Leave Of Absence And Medical Restrictions

On May 30, 2020, Amazon approved the Plaintiff's request for a medical leave of absence until June 20, 2020, and short-term disability from June 7, 2020, to June 20, 2020. ECF Nos. 41-1 at ¶ 15, 41-8 and 41-9. At that time, Amazon also provided the Plaintiff with information about disability benefits, including reasonable accommodations. *Id.* Amazon, subsequently, extended the Plaintiff's leave of absence and short-term disability through August 16, 2020, after the Plaintiff had hip replacement surgery on June 30, 2020. ECF Nos. 41-1 at ¶¶ 16–17, No. 41-10, 41-11 and 41-12.

On July 1, 2020, the Plaintiff's doctor indicated that the Plaintiff would be able to return to work on August 17, 2020, with the following medical restrictions: "(1) no standing more than fifteen minutes each hour; (2) no walking more than fifteen minutes each hour; (3) no lifting more than ten pounds; (4) no pushing/pulling more than twenty pounds; (5) no climbing ladders;

and (6) no overhead lifting." ECF Nos. 41-1 at ¶ 18 and 41-12. The Plaintiff's doctor also recommended that the Plaintiff should find a new role at Amazon, due to his physical condition. ECF Nos. 41-1 at ¶ 18 and 41-12. And so, on July 16, 2020, Amazon approved a temporary accommodation for the Plaintiff, which restructured the Plaintiff's operations manager role to "provide a chair in the office so that he could continue working while being sedentary as much as possible," until his condition improved enough to be ambulatory. ECF No. 41-1 at ¶ 19.

But Amazon contends the Plaintiff did not believe that he could effectively lead his team, given the medical restrictions imposed by his doctor. ECF Nos. 41-1 at ¶ 20 and 41-14. Amazon also contends that, given this concern, the Plaintiff informed Amazon that his job "requires a lot of responsibilities that he is no longer able to do." ECF Nos. 41-1 at ¶ 20 and 41-14. And so, the Plaintiff's doctor updated the medical restrictions for the Plaintiff, to make these restrictions permanent. ECF Nos. 41-1 at ¶¶ 20–21, and 41-15.

On August 3, 2020, Amazon informed the Plaintiff of a proposed accommodation to restructure his role as an operations manager, so that he would not have to patrol the Facility and could perform his duties from the office space. ECF Nos. 41-1 at ¶ 23, 41-6 at 17 (Wilson Dep. Tr. 37:3–9), 41-18. In this regard, Amazon proposed that the Plaintiff use a motorized mobility scooter to allow the Plaintiff to transport himself from his vehicle to the office space located in the Facility. ECF Nos. 41-1 at ¶ 22, 41-2 at 11–12 (Plaintiff's Dep. Tr. 44:13–45:14). But, the motorized scooter would not be allowed on the Facility's warehouse floor. ECF Nos. 41-1 at ¶ 22, 41-2 at 11–12 (Plaintiff's Dep. Tr. 44:13–45:14), 41-6 at 10–12, 15–16 and 18 (Wilson Dep. Tr. 26:8–28:6; 33:10–34:9; 38:14–17).

During his deposition, the Plaintiff testified that he thought Amazon's proposed accommodation "made a ton of sense because the only thing limiting [his] ability to do the role [of an operations manager] was [his] inability to roll through the facility," as needed. ECF No. 41-2 at 11–12 (Plaintiff's Dep. Tr. 44:20–45:1). In addition, the Plaintiff testified that he was aware that another Amazon employee, Nick Wesley, had asked about the possibility of the Plaintiff using a motorized scooter at the Facility and that Mr. Wesley was told by another Amazon employee, Tori Wilson, that "no scooters will be authorized." ECF No. 41-17 at 2.

Ms. Wilson testified during her deposition that, after her discussion with Mr. Wesley, "a formal request for accommodation specifically stating that the scooter would be used just to get to the office" was approved. ECF No. 41-6 at 11 (Wilson Dep. Tr. 27:2–27:6). Ms. Wilson also

4

testified that this accommodation did not include the ability to for the Plaintiff to use the motorized scooter on the warehouse floor, because the "scooters were not authorized to be used on the production floor per [Amazon's] safety standards." *Id.* at 12 (Wilson Dep. Tr. 28:5–28:6). It is, however, undisputed that there was no written policy at Amazon explaining this safety precaution at the time Ms. Wilson and Mr. Wesley discussed the possibility of the Plaintiff using a motorized scooter. ECF Nos. 44-8 at 1, 44-7 at 2.

On August 6, 2020, the Plaintiff requested that his doctor change his medical restrictions to include "no driving a car more than 30 minutes at a time for 6 months." ECF Nos. 41-1 at ¶ 25, 41-20. After the Plaintiff's doctor approved this driving restriction, Amazon explored changing the Plaintiff's shift, to accommodate the restriction and shorten the Plaintiff's commute time. ECF Nos. 41-1 at ¶¶ 25–27, 41-18 and 41-21.

On August 12, 2020, the Plaintiff's doctor again updated the Plaintiff's medical restrictions, to require that the Plaintiff cannot drive for three months. ECF Nos. 41-1 at ¶ 28, 41-22 and 41-23. And so, Amazon extended the Plaintiff's leave of absence and short-term disability through November 12, 2020. ECF Nos. 41-1 at ¶ 30 and 41-25.

On August 13, 2020, the Plaintiff had a conversation with his supervisor, Ms. Wilson, during which the Plaintiff said it "was not fair to [his supervisor] and the team to have some ambiguous return date where a surgeon moves the goal posts" and that his supervisor had "already well exceeded anything he could have asked for, as has Amazon in total." ECF Nos. 41-1 at ¶ 31, 41-26. It is undisputed that, shortly thereafter, the Plaintiff asked Amazon for support in finding him a virtual position. ECF Nos. 41-1 at ¶ 32, 41-26. And so, the Plaintiff's supervisor re-approved the Plaintiff's accommodation, but stated that he wanted the Plaintiff to begin the job reassignment process. ECF Nos. 41-1 at ¶ 33, 41-27 and 41-28.

On November 11, 2020, the Plaintiff emailed his doctor and requested an update to his medical restrictions that would allow him to return to work on January 1, 2021. ECF Nos. 41-1 at ¶ 37, 41-31 and 41-32. The Plaintiff's new request includes permanent restrictions limiting his commute time to 15 miles or 20 minutes, and limiting his shift length to eight hours. ECF No. 41-1 at ¶ 37. While the Plaintiff's doctor approved these new restrictions, Amazon determined that it could not accommodate the Plaintiff's request for an eight-hour shift as a permanent restriction. ECF Nos. 41-1 at ¶ 38, 41-31, 41-32, 41-33 and 41-34. And so, Amazon

5

transitioned the Plaintiff to the job reassignment process.  ECF Nos. 41-1 at ¶¶ 38–39, 41-6 at 24–25 (Wilson Dep. Tr. 54:6–55:1) and 41-35.

The Plaintiff's Job Reassignment Process

It is undisputed that the Plaintiff began the job reassignment process in January 2021 and that he remained on leave during this process.  ECF Nos. 41-1 at ¶ 40 and 41-36.  It is also undisputed that the focus of the job reassignment process was to identify positions for which the Plaintiff was qualified for and would support his restrictions.  ECF No. 41-1 at ¶ 40.

While Amazon's job reassignment process typically lasts for 60 days, the Plaintiff's process was extended to 90 days.  ECF Nos. 41-1 at ¶¶ 47–48, 41-44 and 41-45.  In this regard, it is undisputed that the Plaintiff was informed that there could be a separation of his  employment, if the job reassignment process was unsuccessful at the conclusion of the 90-day period.  ECF Nos. 41-1 at ¶¶ 47–48, 41-44.

During the job reassignment process, the Plaintiff worked with two job search specialists to identify positions that the Plaintiff could fill.  ECF Nos. 41-1 at ¶¶ 40–52,41-36, 41-37, 41-38, 41-39, 41-40, 41-41, 41-42, 41-43, 41-44, 41-45, 41-46 and 41-47.  But, the Plaintiff often disagreed with the job search specialist about whether he was qualified for the proposed positions.  ECF Nos. 41-1 at ¶¶ 46 and 51, 41-44 and 41-46.

Ultimately, Amazon proposed more than 20 positions to the Plaintiff during the job reassignment process.  ECF Nos. 41-1 at ¶ 55; ECF No. 41-50.  But the Plaintiff decided to remove himself from the hiring process for many of the positions.  ECF Nos. 41-1 at ¶¶ 56–57, 41-50, 41-51 and 41-52.  And so, Amazon notified the Plaintiff that the job reassignment process had been unsuccessful, and that his accommodation case would be closed, on March 3, 2021.  ECF Nos. 41-1 at ¶ 58 and 41-53.

On April 3, 2021, Amazon terminated the Plaintiff's employment.  ECF Nos. 41-1 at ¶ 59 and 41-54.

The Plaintiff's Social Security Disability Insurance Applications

Lastly, it is undisputed that the Plaintiff has applied for Social Security Disability Insurance ("SSDI") on several occasions.  ECF Nos. 41-1 at ¶ 62 and 41-2 at 16–18 (Plaintiff's Dep. Tr. 121:3–122:1; 123:18–124:1).  It is also undisputed that the Plaintiff identifies an injury that he incurred during his employment with Amazon as the start date of his disability.  ECF

6

Nos. 41-1 at ¶¶ 63, 64, 65 and 73, 41-2 at 16–17 and 19 (Plaintiff's Dep. Tr. 121:18–122:1; 124:2–5; 132:7–16), 41-57 and 41-58.

The Plaintiff was denied SSDI benefits on two separate occasions. ECF Nos. 41-1 at ¶¶ 66 and 69. During the appeal process with the Social Security Administration ("SSA"), the Plaintiff maintained that he "remain[s] totally disabled due to [his] condition." ECF Nos. 41-1 at ¶¶ 67–68, 41-60, 41-61 and 41-62. The Plaintiff also maintained that his medical restrictions remain the same. ECF Nos. 41-1 at ¶ 72 and 41-2 at 20–21 (Plaintiff's Dep. Tr. 127:11–128:9).

### B.    Procedural History

The Plaintiff commenced this matter on June 3, 2023. ECF No. 1.

On August 15, 2025, Amazon filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof, and a statement of undisputed material facts. ECF No. 41, 41-1 and 41-66. On October 6, 2025, the Plaintiff filed a response in opposition to the Amazon's motion for summary judgment. ECF No. 44.

On January 30, 2026, Amazon filed a reply brief. ECF No. 49. On February 5, 2026, the Plaintiff filed a sur-reply, by leave of the Court. ECF No. 50.

Amazon's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III.  LEGAL STANDARDS

#### A.   Rule 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any

material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

### B.    The ADA

The Americans with Disabilities Act prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a); *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020).  A "qualified individual" under the ADA is one who, with or without reasonable accommodation, can perform the essential functions of the employment position he holds or desires.  *Id.* (quoting 42 U.S.C. § 12111); *see Elledge*, 979 F.3d at 1009.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is a qualified individual for the employment in question; and (3) his employer discharged him or took other adverse employment action because of his disability.[2]  *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 575 (D. Md. 2024).  A disability discrimination claim under the ADA may be proven through direct and indirect evidence, or through the *McDonnell Douglas* burden-shifting framework.  *Id.* at 576 (*Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015)).

Under the *McDonnell Douglas* burden-shifting framework, "a plaintiff alleging employment discrimination under the ADA must produce evidence that establishes a prima facie case of discrimination."  *Id.*  If the plaintiff makes this *prima facie* showing, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for taking the adverse employment action."  *Id.* (citing  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

---

[2] MFEPA and the ADA are analyzed under the same framework.  *See Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020).

S.Ct. 1817, 36 L.Ed.2d 668 (1973)).  "[I]f the defendant articulates a legitimate, non-discriminatory reason for the termination, the burden shifts back to the plaintiff to show that the defendant's asserted justifications are pretextual." *Id.* The Plaintiff can also show pretext through direct or circumstantial evidence.  *Id.* (citation and quotation marks omitted).

To establish a *prima facie* case for a failure-to-accommodate claim under the ADA, a plaintiff must show that: (1) "he was an individual who had a disability within the meaning of the statute;" (2) "the employer had notice of his disability;" (3) "with reasonable accommodation he could perform the essential functions of the position;" and (4) "that the employer refused to make such accommodations." *Jacobs*, 780 F.3d at 579; *Burnett*, 722 F. Supp. 3d at 577.  This Court has held that a plaintiff bears the burden of "establishing his ability to perform the essential functions of his job with a reasonable accommodation." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 697 (D. Md. 2005) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994)).  In this regard, the Court has also held that evidence to show whether a function of the position is essential includes, but is not limited to:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the person to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past holders of the job in question; and (7) the current experience of holders of similar jobs.

*Id.* at 698–99 (citing 29 C.F.R. § 1630.2(n)(3)).  Given this, "[t]he decision about a position's essential functions belongs, in the first instance, to the employer; it accordingly merits considerable deference from the courts." *Elledge*, 979 F.3d at 1009 (internal citation and quotation marks omitted). And so, where, after an "opportunity for discovery, an employee still has not identified a position into which he could have transferred, the court must grant summary judgment in favor of the defendant." *Wehner v. Best Buy Stores, L.P.*, No. 15-2163, 2017 WL 952685, at *12 (D. Md. Mar. 10, 2017) (quoting *Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 360 (3rd Cir. 2002)).

## IV.    ANALYSIS

Amazon has moved for summary judgment on the Plaintiff's disability discrimination claims in this case, pursuant to Fed. R. Civ. P. 56, on the following three grounds: (1) the Plaintiff is judicially estopped from asserting that he is a qualified individual under the ADA,

9

because the Plaintiff certified to the SSA that he was totally disabled and unable to work in any gainful employment; (2) the undisputed material facts show that the Plaintiff cannot establish that Amazon discriminated against him on the basis of his disability, because the Plaintiff is not a qualified individual under the ADA and Amazon had a legitimate, non-discriminatory reason for terminating the Plaintiff's employment; and (3) the undisputed material facts also show that the Plaintiff cannot prevail on his failure-to-accommodate claim, because Amazon "went above and beyond" to accommodate the Plaintiff.  ECF No. 41-66 at 22–38.  And so, Amazon requests that the Court enter summary judgment in its favor on all claims in this case and dismiss the complaint.  *Id*. at 38.

The Plaintiff counters in his response in opposition to Amazon's motion, that summary judgment is not warranted on his disability discrimination claims, because: (1) he is not judicially estopped from pursuing these claims, given the different legal requirements for disability claims under the ADA and before the SSA; (2) he may assert an disability discrimination claim in this case, because Amazon concluded that he was a qualified individual who could perform his essential functions under the ADA; (3) Amazon denied his request to use a motorized mobility scooter based on a warehouse health and safety standards document that Amazon later admitted did not exist; (4) no one from Amazon informed him that he was not qualified for the operations management position; (5) Amazon discriminated against him, by failing to identify positions specific to his skill set; and (6) Amazon sent him job applications without first determining whether he was qualified for those positions. ECF No. 44 at 9–30.  And so, the Plaintiff requests that the Court deny Amazon's motion for summary judgment.  *Id.* at 30.

For the reasons set forth below, the undisputed material facts show that the Plaintiff cannot prevail on his disability discrimination claims, because he is not a "qualified individual" under the ADA.  And so, (1) GRANTS-in-PART Amazon's motion for summary judgment (ECF No. 41); (2) ENTERS JUDGMENT summarily in favor of Amazon on the Plaintiff's claims; and (3) DISMISSES the complaint (ECF No. 1).

### A.    The Plaintiff Is Not A "Qualified Individual" Under The ADA

As an initial matter, the undisputed material facts show that the Plaintiff cannot establish that he is a "qualified individual" under the ADA, to prevail on his claims.  To establish a *prima facie* case of discrimination under the ADA, the Plaintiff must show, among other things, that: he

10

is a "qualified individual" for the employment in question.[3]  *Burnett v. BJ's Wholesale Club*, 722 F. Supp. 3d 566, 575 (D. Md. 2024); *see also Jessup v. Barnes Group, Inc.*, 23 F.4th 360, 365 (4th Cir. 2022) (citing 42 U.S.C. § 12111(8)).  In this regard, the Court has held that a "qualified individual" under the ADA is one who, with or without reasonable accommodation, can perform the essential functions of the employment position he holds or desires.  *Burnett*, 722 F. Supp. At 575 (quoting 42 U.S.C. § 12111).  And so, the Fourth Circuit has held that an employer's determination of a job's essential functions "merits considerable deference from courts in evaluating ADA disability discrimination claims." *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020).

In this case, the undisputed material facts show that the Plaintiff could not perform the essential functions of the operations management position with or without reasonable accommodation.  In this regard, it is undisputed that the operations manager position requires that the Plaintiff work on site to manage shifts within the Facility and to responsibly manage other Amazon employees.  ECF Nos. 41-1 at ¶ 6, 41-2 at 8 (Plaintiff's Dep. Tr. 32:9–18) and 41-5.  It is also undisputed that the work shifts for an operations manager can last from 13 to 15 hours per day.  ECF Nos. 41-1 at ¶ 8 and 41-2 at 8–9 and 13 (Plaintiff's Dep. Tr. 32:19–33:8; 70:15–18).

Notably, the duties of the operations manager position include several physical capability requirements, including "lifting and moving material up to forty-nine pounds; lifting, stretching and reaching below the waist and above the head; frequent walking in the building; standing and walking for up to twelve hours per day; and ascending and descending ladders, stairs, and gangways safely without limitation."  ECF Nos. 41-1 at ¶ 10, 41-2 at 9 (Plaintiff's Dep. Tr. 33:9–34:20) and 41-5.  And so, there can be no genuine dispute that the operations manager position involves significant physical requirements and activity.

The undisputed material facts in this case also make clear that the Plaintiff could not perform the aforementioned duties of the operations manager position with or without the assistance of a motorized mobility scooter.  It is undisputed that the Plaintiff's doctor cleared him to return to work on August 17, 2020, subject to medical restrictions that would not permit: (1)

---

[3] MFEPA and the ADA are analyzed under the same framework.  *See Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020).

11

standing or walking more than 15 minutes per hour; (2) lifting more than 10 pounds; (3), pushing or pulling more than 20 pounds; (4) climbing ladders and (5) overhead lifting.  ECF Nos. 41-1 at ¶ 18 and 41-12.  It is also undisputed that the Plaintiff's doctor subsequently recommended that these medical restrictions become permanent.  ECF Nos. 41-1 at ¶ 21 and 41-15.  Tellingly, the undisputed material facts also show that the Plaintiff's doctor recommended that the Plaintiff find a new role at Amazon, due to his physical limitations.  ECF No. 41-1 at ¶ 21.  And so, the unrebutted evidence in this case shows that the Plaintiff could not perform the essential functions of his position, including walking for more than 15 minutes, climbing ladders and overhead lifting, with or without a reasonable accommodation.

The Plaintiff also fails to advance any evidence to show that use of a motorized mobility scooter on the warehouse floor of the Facility would have allowed him to perform the essential functions of his position, such as lifting and moving material up to 49 pounds and ascending and descending ladders, stairs and gangways safely.  ECF Nos. 41-1 at ¶ 10, 41-2 at 9–10 (Plaintiff's Dep. Tr. 33:9–34:20) and 41-5.  Nor is there any evidence before the Court to show that the Plaintiff could do so.[4]  This is fatal to the Plaintiff's ADA and MFEPA claims.  *Jessup*, 23 F.4th at 365; *Burnette*, 722 F. Supp. at 575.

And so, the Court must GRANT Amazon's motion for summary judgment on the Plaintiff's disability discrimination claims under the ADA and the MFEPA.  Fed. R. Civ. P. 56.

Because the Court concludes that the Plaintiff cannot satisfy the elements of disability discrimination under the ADA and MFEPA, the Court does not address whether the Plaintiff is judicially estopped from bringing these claims.

## V.    CONCLUSION

For the foregoing reasons, the Court:

    (1) **GRANTS-in-PART** Amazon's motion for summary judgment (ECF No. 41);

    (2) **ENTERS JUDGMENT** summarily in favor of Amazon on the Plaintiff's claims; and

---

[4] The undisputed material facts also show that Plaintiff was unable to report to work, given the length of his commute and the driving restrictions imposed by his doctor.  ECF Nos. 41-1 at ¶ 30 and 41-21.  The Court also observes that the Plaintiff fails to identify any Amazon position for which he would be qualified to perform, within the meaning of a "qualified individual," to support his disability discrimination claims based upon the job reassignment process.  *Bennett v. Kaiser Permanent*, 931 F.Supp.2d 697, 716 (D. Md. 2013).

(3)  **DISMISSES** the complaint (ECF No. 1).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
